IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND MANZANILLO, | No. C 10-3783 JSW (PR) |
| Plaintiff, | **ORDER GRANTING SUMMARY JUDGMENT; RESOLVING PENDING MOTIONS** |
| v. | |
| FRANCISCO JACQUEZ, R. GRAVES, R. TUPY, J. ZUCCO, MARK POTTER, ROLF KLOTZ, GREG LEWIS, MAUREEN MCLEAN, | (Docket Nos. 59, 64, 89, 90, 91, 93, 94, 96, 101, 106, 107, 115) |
| Defendants. | |

## INTRODUCTION

This is a civil rights case filed by a *pro se* prisoner pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants, employees at Pelican Bay State Prison, violated his Eighth Amendment rights. Defendants Jacquez, Potter, Klotz and Zucco moved for summary judgment. Plaintiff opposed the motion, the moving defendants filed a reply, Plaintiff filed a supplemental opposition, and the moving defendants filed a supplemental reply. For the reasons set out below, summary judgment is GRANTED in favor of Defendants. A variety of other pending motions are also addressed below.

## BACKGROUND

Plaintiff's declarations and exhibits in support of his opposition to the motion for summary judgment demonstrate that Plaintiff got into a fist fight with another inmate named Pereira at PBSP on June 6, 2009. Defendant Klotz, a correctional officer

ordered them to stop, but they continued to fight.  Other correctional officers arrived on the scene and pepper-sprayed Plaintiff and Pereira.  Plaintiff got into a prone position on the ground, where his leg "may" have been caught underneath his stomach in an awkward position. (Pl. Decl. ¶ 5.)  He did not try to get up or resist.  While applying restraints to Plaintiff, Defendant Zucco, another correctional officer, "kneed in back and ribcage area using his weight wantonly and recklessly."  (*Id.* ¶ 6.)  Defendant Potter, also a correctional officer, "stomped" on Plaintiff's hand while Officer Ford (who is not a Defendant) restrained him.  (*Id.* ¶ 8.)  After Zucco handcuffed Plaintiff, a nurse decontaminated Plaintiff of the pepper-spray in a shower, but the injuries to his hand were not included in the medical report.  Later that afternoon, Plaintiff told Defendant Graves that he only had a scratch, and no head injury.

Plaintiff states that he "has some recollection of mentioning" to Defendant Klotz on June 12 that he had "lingering" pain.  (*Id.* ¶ 21.)  According to Plaintiff, Defendant Klotz ignored this statement.  (*Id.*)  On June 15, Plaintiff put in a request to see a doctor. X-rays were taken the next day and showed that Plaintiff had a broken and displaced rib.  Thereafter, Plaintiff received pain medication, and Defendant Potter stopped working in Plaintiff's unit of the prison.  In October 2009, Plaintiff complained of back pain and an MRI of Plaintiff's back on November 2, 2009, showed that he had two herniated discs.  Plaintiff ultimately lost privileges and time credits for fighting with Periera.

Plaintiff alleges that the prison has a policy prohibiting a "code of silence" about the use of excessive force on inmates, and requiring officials to document, report and investigate allegations by an inmate that excessive force has been used against him.  He claims that Defendants and other prison employees did not follow this policy. According to Plaintiff, he described the use of force in numerous conversations with medical personnel and other prison employees between 2009 and 2011, but the employees did not document, report or investigate those allegations.  He also described the use of force in his written administrative grievances about the use of force by Zucco

and Potter, but the grievances were denied without a "legitimate" investigation.  In addition, he alleges that prison procedures for videotaping interviews after incidents of force and injury were not properly followed, and that facts were omitted from reports about the use of force against him.  Complains that the Rules Violation Report issued against Plaintiff for fighting Pereira did not mention his injuries or his contention that Zucco and Potter had used excessive force.  He claims that all of these actions were part of a conspiracy by PBSP officials to adhere to a "code of silence" about the use of force against him.

Defendants have filed declarations and documentary evidence showing that on June 6, 2009, Plaintiff was housed in PBSP's Secured Housing Unit ("SHU"), which houses dangerous and violent inmates.[1]  (Lembach Decl. Ex. A, B; Maiorino Decl. Exs. D, E, F.)  On that day, inmates in Plaintiff's "pod" were being escorted from their cells one at a time for haircuts.  (Klotz Decl. ¶ 5.)  While Pereira was getting his hair cut, Plaintiff slipped into Pereira's cell.  (Maiorino Decl. Ex. G.)  When Pereira returned to his cell, Plaintiff punched him in the face and head several times, and Pereira struck him back.  (Klotz Decl. ¶ 5.)  They eventually wrapped their arms around each other and fell to the ground where they continued to fight, punching each other several times in the face, head, arms, ribs and back.  (*Id.*).  Defendant Klotz was on the other side of the metal door to the pod and ordered them to stop fighting, but they continued to fight. (*Id.*)

After other officers arrived, the door to the pod opened, and the new officers ordered Plaintiff and Pereira to stop fighting and get down.  (Zucco Decl. ¶ 6.)  When they still did not stop fighting, the officers pepper-sprayed them.  (*Id.*)  The pepper-spray was oily, and Defendant Potter slipped on it.  (*Id.*)  Defendant Zucco put his hands on Plaintiff's upper back, pulled him away from Pereira, and put him into the prone

---

[1]Defendants also submit evidence that Plaintiff had previously been convicted of assaulting another prisoner while incarcerated and was validated as a gang associate (*see id.*), but this evidence does not appear relevant because there is no evidence that Defendants knew these facts at the time they decided to use force against Plaintiff.

position, face-down on the floor.  (*Id.*)  Zucco ordered him to put out his hands and lay still, but Plaintiff continued to move his body and limbs, trying to place both hands on the floor.  (*Id.*)  Zucco believed that Plaintiff was trying to bend his knees and to stand up, and that if he did so, then he would try to attack Pereira or an officer.  (*Id.*)  Zucco's hands were slippery from the oily pepper-spray, and he put his left knee on Plaintiff's back to prevent Plaintiff from standing up.  (*Id.*)

Defendant Potter saw Plaintiff's hands in front of him and that he was not complying with orders to put them behind his back.  (*Id.*).  He pulled Plaintiff's left hand and put his right foot on Plaintiff's left wrist until Plaintiff opened his hand.  (*Id.*)  Potter removed his foot when Plaintiff's hand opened.  (*Id.*)  With the help of other officers, Zucco pulled Plaintiff's arms behind his back, and Zucco handcuffed him.  (Zucco Decl. ¶ 7.)

The officers helped Plaintiff to his feet and took him to the showers for decontamination, and then they gave him clean shorts and took him to the medical clinic.  (Zucco Decl. ¶ 8.)  Plaintiff said, "I am fine," did not claim any injuries, and denied being in pain or having shortness of breath.  (Silva Decl. ¶¶ 4, 8.)  Plaintiff submitted a request for medical attention on June 15, 2009, complaining of pain in his back, shoulder and side, and an x-ray taken the next day showed that he had a broken rib on the right side.  (Sayre Decl. ¶ 10.)  The x-ray showed the fracture was "acute," which meant that healing, termed "bone knitting," of the rib had not yet begun.  (*Id.* at ¶ 12.)  Dr. Sayre, the Chief Medical Officer at PBSP, opines that if the broken rib had occurred on June 6, then the x-ray would have shown that the rib had begun healing, and Plaintiff would have experienced substantial amounts of pain while breathing from the time the rib broke.  (*Id.*)  Plaintiff complained of back pain on July 22, 2009, and the MRI taken in November showed disc "dessication," and protrusions of two discs.  (*Id.* ¶ 13.)  Dr. Sayre explains that herniated discs are not caused by a traumatic event, such as the incident on June 6, but rather that they develop gradually over a considerable amount of time.  (*Id.*)  Plaintiff's hand contusions are not reflected in his medical

4

records following the June 6 incident.  (*Id.*)

On the day of the incident, Plaintiff declined to be interviewed on videotape about it.  (Maiorino Decl. Ex. C.)  Prison officials eventually reviewed the incident and determined that the officers' actions complied with PBSP's policy on the use of force.  (*Id.* at Ex. G.)

## DISCUSSION

### I.   <u>Summary Judgment</u>

Defendants Zucco, Potter, Jacquez and Klotz filed a motion for summary judgment on the grounds that there are no material facts in dispute and that they are entitled to qualified immunity.[2]

### A.   <u>Standard of Review</u>

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions

---

[2]Defendants McLean and Lewis did not participate in the motion because they were not included in the original complaint and thus were not yet served at the time the motion was filed. The claims against them are discussed below.  The original complaint included claims against Defendants Graves and Tupy, but they were dismissed and then not included in the superseding amended complaint.

of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citations omitted). When the moving party bears the burden of proof and persuasion on an issue at trial, it must at summary judgment "show that 'the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008).

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 630-31.

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Plaintiff's complaint was signed under penalty of perjury and therefore may be considered in deciding the motion for summary judgment.

    B.   <u>Analysis</u>

        1.   <u>Defendants Zucco and Potter</u>

Plaintiff claims that Defendants Zucco and Potter used excessive and unnecessary force upon him on June 6, 2009, in violation of his rights under the Eighth Amendment. Whenever prison officials stand accused of using excessive force in

violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Id.* at 7. The correctly-stated standard for determining whether excessive force was used in violation of the Eighth Amendment "is whether the defendants applied force 'maliciously and sadistically for the very purpose of causing harm,' – that is any harm." *Robins v. Meecham*, 60 F.3d 1436, 1439-41 (9th Cir. 1995).

The evidence is undisputed that Zucco and Potter used force to restrain Plaintiff after he had started a fist fight with another inmate, Pereira, punched Pereira multiple times in the face and head, and ignored correctional officers' orders to stop fighting. Prison employees are obligated to stop a fight between inmates; indeed, allowing the fight continue would amount deliberate indifference to the inmates' safety, an Eighth Amendment violation. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). As the verbal warnings had not worked, physical force became a necessity to stop the fight, and officers first employed pepper-spray. Plaintiff does not complain that officers pepper-sprayed them, but rather that Zucco and Potter use of force after the pepper-spray. According to Plaintiff, once he was pepper-sprayed, he got into a prone position on the ground and stopped resisting in "any way." Defendants dispute that Plaintiff had become compliant, and that he was moving his arms and limbs, avoiding handcuffs, and attempting to get up. For purposes of this motion, however, the Court assumes from Plaintiff's general statements that he was not resisting "in any way" that he was not resisting Zucco's and Potter's efforts to handcuff him after he was pepper-sprayed.

For purposes of the Eighth Amendment, Plaintiff must not only show that Zucco and Potter used unnecessary force, but that they did not in good faith believe that the

force was necessary, and instead were being malicious and sadistic. *See Hudson*, 503 U.S. at 6-7.  For purposes of this case, that means that he must show that Zucco and Potter did not in good faith believe that Plaintiff continued to resist or present a risk of harm after being pepper-sprayed.  Zucco and Potter both state that they believed that Plaintiff was trying to resist their efforts to handcuff him and that was bending his knees in order to stand up.  Plaintiff states that he had his leg in an awkward position under his body, which may be have been why Zucco and Potter thought he was bending his knees under him in order to get up.  In any event, there is no evidence that Defendants did not, as they say, in fact believe that Plaintiff was not intending to comply or that he might stand up and cause further harm.

The surrounding circumstances could well support a good faith belief that Plaintiff, even if compliant, still presented a substantial risk of harm.  Plaintiff was still not handcuffed.  Defendants had ample reason to believe that he was violent, as he was housed in an area of the prison known for inmates with a history of violence, and he had just started a violent altercation with another inmate.  It is undisputed that they did not know whether Plaintiff had a weapon.  Zucco and Potter also had reason to believe that Plaintiff might not remain compliant as he had just ignored the officers' repeated orders to stop fighting.  These circumstances gave Zucco and Potter ample reason to believe in good faith that they needed to continue to use some force to restrain Plaintiff, at least until he was handcuffed.

The amount of force that Zucco and Potter used, even if the evidence is viewed in a light most favorable to Plaintiff, was not excessive under the circumstances.  Plaintiff states that Zucco "kneed" him in the back with all of his weight.  It is unclear from this statement whether Plaintiff contends that Zucco struck him with this knee or whether, as Zucco states, he used his knee to hold Plaintiff down.  Zucco's using his knee to hold Plaintiff down was necessary because the oil-based pepper-spray had made the area slippery, and Zucco needed to use his hands in order to handcuff Plaintiff.  Even if Plaintiff's statement is interpreted to mean that Zucco struck Plaintiff with his knee, and did not simply hold him down with the knee, a single knee to the back of a

violent inmate who was not yet handcuffed and had just disobeyed orders to get down does reasonably suggest sadism or malice.

Plaintiff claims that Zucco broke his rib and herniated his discs, but he does not present evidence from which a reasonable juror could draw such a conclusion.[3]  Injury is relevant only to the extent it indicates how much force was used.  *Wilkins*, 130 S. Ct. at 1178-79.  The only medical opinion is that Plaintiff's injuries were not caused by Zucco.  If Zucco had broken his rib on June 6, 2009, there would have been signs that the bone had begun to heal by the time the x-ray was taken on June 16.  Plaintiff also would have experienced high levels of pain immediately, but he did not complain of pain until June 12.  In addition, the medical evidence is uncontradicted that herniated discs develop gradually over time and are not caused by a single event such as the incident with Zucco and Potter.  The injury evidence does not indicate that Zucco injured Plaintiff's as such does not indicate that Zucco applied a great deal of force on him.

The amount of force that Potter used was also not excessive.  According to Plaintiff, Potter "stomped" on his hand once and caused "contusions," while Potter states that he stepped on Plaintiff's wrist.  Even taking Plaintiff's version as true, Potter did not repeatedly stomp on the hand, and the fact that Plaintiff did not suffer injuries more serious than contusions, such as cuts or a broken finger, tends to indicate that the stomp was not done with a great deal of force.[4]  It is undisputed that Plaintiff's hand was still free at the time, and as such, if he was holding a weapon he could have slashed or otherwise injured the correctional officers or Pereira.  Under these circumstances, stomping on Plaintiff's hand once to get Plaintiff to open his hand to reveal whether he

---

[3]The Court is aware that injury and force are not perfectly correlated.  *Wilkins*, 130 S. Ct. at 1178-79.  That is why Court's analysis is primarily based on Plaintiff's description of the force used by Zucco and Potter, and not the lack of evidence that they caused any substantial injury.

[4]The Court accepts as true Plaintiff's allegations that Potter caused contusions on this hand and that these contusions were omitted from medical reports of Plaintiff's injuries following the incident.

was holding a weapon does not suggest that Potter was acting maliciously or sadistically.

Even assuming that Zucco and Potter applied the force that Plaintiff describes, they did not apply a lot of force, and certainly no more than would appear to a correctional officer acting in good faith to be necessary to secure and handcuff an inmate who had recently been in a violent altercation, refused to obey orders and might be armed.

Lastly, there is undisputed evidence that Zucco and Potter took a number of steps to temper the severity of the force they used.  As soon as Plaintiff was handcuffed, Zucco and Potter stopped using force, took him immediately for a shower to decontaminate him of pepper-spray, and brought him to medical personnel for an evaluation.  These steps further indicate that Zucco and Potter did not harbor malicious and sadistic intent to hurt Plaintiff but rather that they had acted in a good faith to prevent harm.

For the foregoing reasons, there is no genuine issue of fact as to whether the force used by Zucco and Potter was applied maliciously and sadistically to cause harm. As a result, Defendants Zucco and Potter are entitled to summary judgment on Plaintiff's Eighth Amendment claims.[5]

> 2.   Defendant Klotz

Plaintiff claims that Defendant Klotz was deliberately indifferent to his Eighth Amendment rights despite knowing that Plaintiff might be in pain.  Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  The only evidence that Klotz might have known about Plaintiff's pain is Plaintiff's statement that he "has some recollection of mentioning" to Klotz six days after the incident that pain was "lingering."  (Pl. Decl. ¶ 21.)  Assuming that Plaintiff's vague recollection is true, his simply "mentioning" the pain is not the same thing as asking

---

[5]In light of this conclusion and the similar conclusions as to the other Defendants, the Court need not read Defendants' alternate argument about qualified immunity.

Klotz to see a doctor or nurse.  There is no evidence that Plaintiff described the pain to Klotz in any way that would alert Klotz that medical attention was being requested or was required.  As a result, there is no genuine factual dispute as to whether Klotz violated Plaintiff's Eighth Amendment rights by being deliberately indifferent to Plaintiff's serious medical needs.  It is further noted that Plaintiff received a medical exam on the day of the incident and reported no injuries, and a few days after his complaint to Klotz he received a further medical examination, an x-ray and pain medication.  Eventually, he also received an MRI of his back and further medical examinations.  In short, there is no evidence suggesting that Plaintiff's medical needs were not addressed.

### 3.   Supervisor Defendants

Plaintiff claims that Jacquez, the PBSP Warden in June 2009, Lewis, the current PBSP Warden, and McLean, the Health Care Manager at PBSP, did not properly train and supervise their subordinates in how to avoid violating the Eighth Amendment.  A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012).  For the reasons discussed herein, there is no genuine issue of fact as to whether Zucco, Potter and Klotz violated Plaintiff's Eighth Amendment rights.  As a result, there is no genuine factual issue as to whether Lewis, McLean and Jacquez, even if they did fail to adequately train or supervise their subordinates, that such failure caused a constitutional violation in this case.  Accordingly, these Defendants are also granted summary judgment on Plaintiff's claims.

Although Defendants McLean and Lewis did not join in the summary judgment motion, summary judgment can be granted in their favor because they are similarly situated vis-a-vis Plaintiff's claims to Defendant Jacquez, a supervisor defendant who did move for summary judgment.  Summary judgment may be granted by the court sua sponte in favor of a nonappearing party on the basis of facts presented by other

11

1  defendants who have appeared. *See Columbia Steel Fabricators v. Ahlstrom Recovery*,

2  44 F.3d 800, 802-03 (9th Cir.) (affirming grant of summary judgment in favor of

3  nonappearing defendant where plaintiff, in response to summary judgment motion filed

4  by defendant who had appeared, had "full and fair opportunity to brief and present

5  evidence" on dispositive issue as to claim against nonappearing defendant); *see also*

6  *Abagninin v. AMVAC Chemical Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (holding

7  district court properly granted motion for judgment on the pleadings as to unserved

8  defendants where such defendants were in a position similar to served defendants

9  against whom claim for relief could not be stated).  McLean and Lewis stand in the

10  same position as Jacquez in that their involvement is allegedly failing to adequately

11  train and supervise their subordinates.  The facts presented by the moving defendants

12  show that a reasonable jury could not return a verdict against McLean or Lewis because

13  any failure to properly supervise or train did not cause a constitutional violation in this

14  case.  Summary judgment will be granted in his favor.

        4.    "Code of Silence" Allegations

        Plaintiff also claims that Defendants violated his Eighth Amendment rights by

conspiring in a "code of silence" about the alleged use of excessive force against him on

June 6, 2009.  This claim is based upon his allegations that they and numerous other

prison officials failed to adequately document, report, or investigate his claims of

excessive force and his injuries.  The exhibits and declarations submitted by both parties

evidence shows that officials in fact extensively reported, documented and investigated

of the incident.  Defendants and other officials prepared incident reports, attempted to

interview Plaintiff on videotape, did further investigations in connection with the

discipline imposed upon Plaintiff, held disciplinary hearings and reported the findings,

and conducted further investigation and documentation of the incident in response to

Plaintiff's administrative appeals.

        Plaintiff alleges that these efforts were incomplete and inadequate, however, in

violation of prison policy and a remedial plan implemented in the settlement of a prior

12

federal class action.[6]  As explained in the Order of Service (docket number 14), however, prison policy is not federal law and no federal constitutional right or other federal law cited by Plaintiff or known to the Court requires prison officials to report or investigate the use of force.  Nor can the failure to adhere to such policy be said to have somehow caused excessive force to be used because, for the reasons discussed above, there is no genuine factual issue as to whether the excessive force was used in this case. If Plaintiff believes that prison policies are not being adhered to, his remedy is to seek enforcement of the policy in administrative grievances; if these policies have the force of state law, then his remedy is in the state courts.  The settlement agreement of a prior case also does not create any federal cause of action independent of Plaintiff's Eighth Amendment claims discussed above.

In the absence of any federal law requiring the reporting and documentation of excessive force that Plaintiff asserts failed to take place in this case, his allegations, even if true, do not state a cognizable claim for relief against Defendants.

**II.**     **Other Motions**

1.     Defendants' Request for Screening Order

On January 3, 2012, Defendants Lewis and McLean filed a waiver of reply and request to screen Plaintiff's amended complaint under 28 U.S.C. § 1915A. (Docket No. 103). The amended complaint was already screened.  On July 15, 2011, the Court granted Plaintiff leave to file the amended complaint, found that it superceded the original complaint, and ordered Defendants to respond to it.  Later, on October 17, 2011, the Court ordered the Marshal to serve Defendants McLean and Lewis and ordered them to notify the Court whether they intended to join the other Defendants' summary judgment motion or file one separately.  Prior to issuing those orders, the Court had screened the amended complaint pursuant to 28 U.S.C. § 1915A and found that, when liberally construed, it stated cognizable claims against Defendants McLean

---

[6]The policy appears to have been part of the remedial plan.  The case is *Madrid v. Gomez*, No. C 90-3094 TEH (N.D. Cal. filed Oct. 26, 1990).

and Lewis, as well as against Defendants Zucco, Potter, Klotz and Jacquez.  Otherwise, the Court would not have granted leave to file the amended complaint or ordered it serve upon Defendants Lewis and McLean.  Consequently, Defendants' request for screening (docket number 103) is DENIED as unnecessary.[7]

        2.     <u>Motion to File Supplemental Complaint</u>

Plaintiff has filed a motion to file a "supplemental complaint" alleging that in 2011 six new defendants set him up to be attacked by another inmate, made "inappropriate" and "defamatory" comments towards him, threatened him, moved him to the Psychiatric Services Unit to address his mental health problems, used excessive force while extracting him from his cell, retaliated against him for filing a federal lawsuit, and planted evidence in his cell.  He also alleges that Defendants McLean and Lewis failed to adequately train and supervise them.

Federal Rule of Civil Procedure 15(a) is generally applied liberally in favor of amendments when justice so requires.  *See Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994).  Plaintiff does not seek to file a second amended complaint, but rather a "supplemental complaint."  As the Court informed Plaintiff in denying his previous requests to file supplemental complaints, however, piecemeal complaints are not favored because they set forth Plaintiff's claims in multiple documents, creating confusion and inefficiency.

In any event, liberally granting leave to amend does not continue, however, where as here the plaintiff has previously been granted leave to amend and seeks to amend the complaint again to add new claims and new defendants after summary judgment motions have been filed.  *See Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003) (district court's discretion to deny leave to amend is particularly broad

---

[7]Defendants argue that the claims against McLean and Lewis should be "screened out" because they are based solely upon a theory of respondeat superior.  That is not the case.  Plaintiff does not rely on a respondeat superior theory, but rather on the theory that McLean and Lewis failed to adequately train or supervise their subordinates.  *See Preschooler II v. Davis*, 479 F.3d 1175, 1183 (9th Cir. 2007).

where the plaintiff has previously filed an amended complaint); *cf.* Fed. R. Civ. P. 15(a)(2). Here, Plaintiff seeks to add a host of new claims based on events that are distinct from, and took place long after, the incident of excessive force that is at the heart of the instant case. Bringing new claims against new defendants that are not related, or only tangentially so, to the claims pending herein would run afoul of the rules against improper joinder of claims and parties. *See* Fed. R. Civ. P. 18, 20. If Plaintiff wants to pursue the claims in his proposed supplemental complaint, he must do so in a new case, not in this one. The motion to file a supplemental complaint (docket number 96) is DENIED.

### 3.   Motion to Compel

Plaintiff filed two motions to compel responses to his discovery requests. (Docket numbers 90, 59.) Defendants responded to the first motion. Plaintiff was provided with all of the incident reports and investigative records into the June 6, 2009, incident, as well as all of the medical records regarding his care following that incident. In his motions to compel he seeks additional documents. He seeks records of general CDCR health care protocols implemented in a remedial plan from another federal class action case, past copies of the CDCR's use of force policy, reports by the CDCR's "Investigative Services Unit" into other incidents of the use of force, memos by CDCR staff about banning a "code of silence," and medical records related to other incidents. Plaintiff also seeks the disciplinary reports of Pereira from the June 6, 2009, incident. Plaintiff contends that these documents are relevant to his allegations of a "code of silence" in that they can show that Defendants did not comply with prison policies regarding the proper reporting, documentation and investigation into the use of force. As explained above, however, the failure to follow prison policies on these issues does not violate federal law. As a result, there is no need for Defendants to produce the documents relevant claims that are not cognizable.

Plaintiff also seeks a report about the June 6, 2009, incident by the "Departmental Executive Review Committee," as well as "peer reviews" by nurses and doctors about the June 6, 2009, incident. Defendants indicate that no such documents

exist, and Plaintiff provides no evidence to the contrary.

Plaintiff also seeks reports, records and videotaped interviews that pertain to incidents alleged in his proposed "supplemental" complaint. Leave to file the supplemental complaint is being denied, and the claims and incidents alleged therein are no part of this case. If Plaintiff chooses to file a new case based on the incidents alleged in the supplemental complaint, which he may do, he may seek discovery of documents relating to such incidents in his new case.

As the documents Plaintiff seeks to compel either do not exist or do not pertain to the cognizable claims in this case, his motions to compel are DENIED.

    4.    Other Motions

Plaintiff has filed a motion to require Defendants Lewis and McLean to comply with the order dated October 17, 2011, by filing a motion for summary judgment or notice that they are joining the summary judgment motion of the other defendants. Such a motion (docket number 106) is DENIED as moot in light of the ruling, above, that Lewis and McLean are entitled to summary judgment based on the evidence presented in connection with the other Defendants' summary judgment motion.

Plaintiff filed two motions to stay ruling on the summary judgment motion to allow time for him to serve Defendants with his opposition papers before requiring them to file a reply brief. Defendants were granted an extension of time allowing them to file their reply brief after they were eventually served with the opposition papers. Further time was later granted to allow a supplemental opposition by Plaintiff, and a supplemental reply brief. The Court has considered all of these papers in ruling on the summary judgment motion. Accordingly, the motions to stay are DENIED (docket number 89 and 94) as unnecessary.

Defendants' motion to stay discovery (docket number 107) until resolution of their motion for summary judgment is DENIED as moot in light of this order resolving said motion. Also in light of the grant of summary judgment, Plaintiff's motion for appointment of counsel (docket number 101) is DENIED. Plaintiff's motion for immediate injunctive relief (docket No. 91) is DENIED because, for the reasons

discussed above, there is no likelihood of Plaintiff's success on the merits of his claims.

Plaintiff's motion to file missing pages (docket number 115) and to file a proof of service (docket number 93) are GRANTED.

### CONCLUSION

For the foregoing reasons, the motion for summary judgment filed by Defendants Jacquez, Potter, Klotz and Zucco (docket number 64) is GRANTED, and summary judgment is also GRANTED in favor of Defendants McLean and Lewis.  Defendants' motions (docket numbers 103 and 107) and Plaintiff's motions (docket numbers 59, 89, 90, 91, 94, 96, 101, 106) are DENIED.  Plaintiff's other motions (docket numbers 93 and 115) are GRANTED.

The Clerk shall enter judgment, close the file and terminate all pending motions.

IT IS SO ORDERED.

DATED: September 18, 2012

_____
JEFFREY S. WHITE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

1

2

3    RAYMOND MANZANILLO,                    Case Number: CV10-03783 JSW

4              Plaintiff,                   **CERTIFICATE OF SERVICE**

5       v.

6    FRANCISCO JAQUEZ et al,

7              Defendant.
     _____/

8

9    I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
     Court, Northern District of California.

10

11   That on September 18, 2012, I SERVED a true and correct copy(ies) of the attached, by placing
     said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by
     depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office

12   delivery receptacle located in the Clerk's office.

13

14
     Raymond J. Manzanillo
15   PBSP
     P.O. Box 7500
16   J91574
     Crescent City,  CA 95532

17

18   Dated: September 18, 2012

19                                          Richard W. Wieking, Clerk
                                            By: Jennifer Ottolini, Deputy Clerk
20

21

22

23

24

25

26

27

28